**FILED**

IN THE UNITED STATES DISTRICT COURT

AUG – 4 2026

FOR THE SOUTHERN DISTRICT OF ILLINOIS

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
BENTON OFFICE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 24-cr-40047-Smy |
| v. | ) | |
| | ) | Title 18, United States Code, |
| RONALD DALE KOONTZ, | ) | Sections 371, 1505, 1519 |
| DEMITRIOS GEORGE MACROPOULOS, | ) | |
| RANDY L. NOWLAND, and | ) | Title 30, United States Code, |
| CORY TAYLOR HUMPHREY, | ) | Section 820 |
| | ) | |
| Defendants. | ) | |

## INDICTMENT

THE GRAND JURY CHARGES:

## COUNT 1
### Conspiracy to Defraud the United States

At times relevant to this Indictment:

1.      The MC#1 Mine (hereinafter "MC#1 Mine" or "the Mine") was an underground coal mine in Franklin County, Illinois, in the Southern District of Illinois. The U.S. Department of Labor assigned the Mine ID # 11-03189 to the MC#1 Mine.

2.      The MC#1 Mine was a "mine," as defined by the Federal Mine Safety and Health Act of 1977, as augmented by the MINER Act of 2006 (the "Mine Act"), 30 U.S.C. § 802(d), and was subject to the provisions of the Mine Act because its operator, M-CLASS MINING, LLC, used equipment manufactured outside the State of Illinois that entered and affected interstate commerce and the products of the Mine entered and affected interstate commerce. 30 U.S.C. § 803.

3.      The MC#1 Mine is divided into two sides: the M-Class Mine and the Viking Mine. The M-Class and Viking sides of the MC#1 Mine share a common ventilation system. M-CLASS

MINING, LLC (hereinafter "M-CLASS") was the "operator" as that term is defined by 30 U.S.C. § 802(d) of the M-Class side of the mine. Company A provided oversight and supportive services to the M-Class mine. A third company operated the Viking side of the Mine.

4.      The MC#1 Mine extracted coal via a mining technique known as longwall mining. A coal mining "section" was an area of a mine where coal was being produced. MC#1 Mine had multiple active sections. Longwall mining is the most productive method of underground coal mining; it uses equipment and a mining configuration that permitted the extraction of large swaths of coal in a short period of time. The equipment needed to run a longwall mining section was expensive, typically costing tens of millions of dollars.

5.      The MC#1 Mine was subject to regular federal mine safety inspections conducted by the United States Department of Labor's Mine Safety and Health Administration ("MSHA"), which was part of the executive branch of the government of the United States. M-CLASS was subject to monetary penalties imposed by MSHA for violations of mandatory federal mine safety and health standards that MSHA safety inspectors discovered during inspections of the MC#1 Mine.

6.      Proper ventilation of a coal mine was essential to preventing explosions. The coal mining process at the MC#1 Mine generated coal dust and methane gas which, if they reached a certain concentration, were each explosive. A bleeder fan system was used to circulate a constant supply of air within the Mine to prevent methane concentrations from reaching an explosive concentration.

7.      Pursuant to federal regulation requirements, M-CLASS submitted and MSHA approved an Emergency Evacuation and Firefighting Plan for the MC#1 Mine.

2

8.    Defendant **RONALD DALE KOONTZ** ("KOONTZ") was the General Manager and Vice President of Operations of Company A, which provided operational consulting services to defendant M-CLASS for its operation of the MC#1 Mine. **KOONTZ** was an "operator" of the MC#1 Mine as that term is defined by 30 U.S.C. § 802(d) and an "agent" of M-CLASS as that term is defined by 30 U.S.C. § 802(e).

9.    Timothy Brandon Parsons ("Parsons") was the Mine Manager of the MC#1 Mine. Parsons was an "operator" of the MC#1 Mine as that term is defined by 30 U.S.C. § 802(d) and an "agent" of M-CLASS as that term is defined by 30 U.S.C. § 802(e).

10.   Defendant **DEMITRIOS GEORGE MACROPOULOS** ("MACROPOULOS") was the Superintendent of M-CLASS. **MACROPOULOS** was an "operator" of the MC#1 Mine as that term is defined by 30 U.S.C. § 802(d) and an "agent" of M-CLASS as that term is defined by 30 U.S.C. § 802(e).

11.   Defendant **RANDY L. NOWLAND** ("NOWLAND") was the Second Shift (3:00 PM to 11:00 PM) Mine Manager for M-CLASS and was an "operator" of the MC#1 Mine as that term is defined by 30 U.S.C. § 802(d) and an "agent" of M-CLASS as that term is defined by 30 U.S.C. § 802(e).

12.   Defendant **CORY TAYLOR HUMPHREY** ("HUMPHREY") was the Third Shift (11:00 PM to 7:00 AM) Mine Manager for M-CLASS and was an "operator" of the MC#1 Mine as that term is defined by 30 U.S.C. § 802(d) and an "agent" of M-CLASS as that term is defined by 30 U.S.C. § 802(e).

13.   Derek Justin Partain ("Partain") was the Second Shift Longwall Foreman for M-CLASS. Partain was an "agent" of M-CLASS as that term is defined by 30 U.S.C. § 802(e).

14. At all times relevant to this Indictment, the individual defendants—**KOONTZ, MACROPOULOS, NOWLAND,** and **HUMPHREY**—acted within the scope of their employment and authority for M-CLASS and intended, at least in part, to benefit M-CLASS.

15. The Mine Act and regulations promulgated by the Secretary of Labor, acting through MSHA, set forth mandatory health and safety standards that each operator and its agents must adhere to. Included in those standards were requirements involving mandatory roof control plans, ventilation plans, emergency response plans, examinations, and record keeping. Many of those mandatory standards related to roof falls, fires, and explosions.

16. The Mine Act required emergency response plans to include the tracking of the locations of underground personnel. 30 U.S.C. § 876(b)(2)(E)(ii).

17. Mine operators and their agents were required to contact MSHA at once, without delay, and within 15 minutes after the operator knew or should have known that an accident had occurred. 30 C.F.R. § 50.10. "Accident" includes a mine explosion, mine ignition, mine fire, or mine inundation, or injury to or death of any person. 30 U.S.C. § 802(k). In underground mines, "accident" also includes an unplanned fire not extinguished within 10 minutes of discovery. 30 C.F.R. § 50.2(h)(6).

18. The mandatory safety standards for underground coal mines require the responsible person to initiate and conduct an immediate mine evacuation when a mine emergency presents an imminent danger to miners due to fire, explosion, or gas or water inundation. 30 C.F.R. § 75.1501(b). A responsible person is the person designated by the mine operator to take charge during mine emergencies. 30 C.F.R. § 75.1501(a).

19.    "Imminent danger" means the existence of any condition or practice in a coal or other mine which could reasonably be expected to cause death or serious physical harm before such condition or practice can be abated. 30 U.S.C. § 802(j).

20.    Coal mines were required to conduct regular safety examinations to check for hazards and violations of the health and safety standards.  To ensure that all mines were operated in a safe manner, preshift and on-shift examinations were required every 8-hour interval. 30 C.F.R. §§ 75.360 and 75.362. The preshift and on-shift examinations were required to be conducted by a certified person and were required to identify hazardous conditions in the mine, violations of mandatory health and safety standards, test for methane and oxygen deficiency, and determine if the air was moving in the proper direction. The person conducting the examination certified the examination by making a record which was required to include a record of hazardous conditions and their locations. The record was required to further record the action taken to correct the hazardous conditions found during the examination. The preshift safety examinations were required to be conducted within three hours before any working shift and at least once during each working shift. Each record was to be countersigned by a mine foreman or equivalent mine official. 30 C.F.R. §§ 75.360(g) and 75.362(g).

21.    **MACROPOULOS, HUMPHREY, NOWLAND**, Partain, Parsons and other members of M-CLASS management were certified to conduct preshift and on-shift examinations required by 30 C.F.R. §§ 75.360(g) and 75.362(g).

22.    M-CLASS submitted its Mine Emergency Evacuation and Firefighting Plan to MSHA for approval on or about June 19, 2019. **KOONTZ, MACROPOULOS, HUMPHREY,** Parsons, and others were designated in M-CLASS's approved Mine Emergency Evacuation and Firefighting Plan to conduct mine emergency evacuation and instruction drills at the MC#1 Mine.

The Plan provided that "during a mine emergency, every effort must be made to evacuate the mine."

23.    M-CLASS's approved Emergency Evacuation and Firefighting Plan required M-CLASS to initiate and conduct an immediate mine evacuation after it discovered an unplanned fire that could not be extinguished within 10 minutes of discovery.

24.    On or about August 13, 2021, a fire began in the Mine during or after the use of cutting torches to cut and remove material from a secondary roof support structure that had collapsed.

25.    On or about August 14, 2021, after MSHA inspectors confirmed that an active fire remained underground at the MC#1 Mine, MSHA ordered the withdrawal of all persons from the Mine pursuant to Section 103(k) of the Mine Act, 30 U.S.C. § 813(k) (also known as a "Section 103(k) order" or "K-order"), and assumed control over activities undertaken to address the fire and recover the Mine.

26.    MSHA then conducted an investigation and administered its K-order to determine the location, extent, duration, and continuing status of the fire, and to determine what measures were required before persons could reenter the Mine and M-CLASS could resume mining operations.

27.    As part of MSHA's investigation and administration of the K-order, boreholes were drilled from the surface to the area near the longwall fire, and air samples were drawn through the boreholes. The composition of those samples was relevant to MSHA's determination of whether the fire continued to burn underground and what recovery measures were appropriate.

28.    Between August 9, 2021, and August 20, 2021, in the Southern District of Illinois, defendants,

**RONALD DALE KOONTZ,**
**DEMITRIOS GEORGE MACROPOULOS,**
**RANDY L. NOWLAND, and**
**CORY TAYLOR HUMPHREY,**

together with Partain, Parsons, and other agents and responsible persons of M-CLASS, did knowingly, willfully, and voluntarily combine, conspire, confederate, and agree together and with other persons, both known and unknown to the grand jury, to defraud the United States and an agency thereof by impeding, impairing, obstructing, and defeating the lawful and legitimate governmental functions of MSHA in the administration and enforcement of the Mine Act.

## Object of the Conspiracy

29. The object of the conspiracy was to defraud the United States and MSHA by impeding, impairing, obstructing, and defeating MSHA's lawful governmental functions in the administration and enforcement of the Mine Act and the regulations promulgated thereunder through deceit, craft, trickery, and other dishonest means.

## Manner and Means of the Conspiracy

30. The members of the conspiracy used the following manners and means, among others, to effect the object of the conspiracy:

a. Limiting and discouraging communications within the Mine that would alert miners to hazardous conditions in the Mine.

b. Concealing their presence in underground locations by deliberately entering and working in the Mine without tracking devices that would have created a record of their presence and movements.

c. Concealing the collapse of the secondary roof-support structure and the unplanned fire by knowingly creating, signing, and countersigning preshift and on-shift examination reports that falsely stated that no hazardous conditions existed.

7

d.    Concealing the unplanned fire from MSHA by deliberately failing to notify MSHA as required by 30 C.F.R. § 50.10.

e.    Concealing the existence and seriousness of the fire from miners and MSHA by continuing coal-mining operations, conducting ad hoc firefighting activities instead of implementing the approved emergency plan, and failing to initiate and conduct an immediate evacuation of the Mine.

f.    Misrepresenting to miners that a mine-equipment malfunction was the reason for ceasing coal-mining operations rather than disclosing that an unplanned fire in the Mine had not been extinguished within 10 minutes of discovery.

g.    Misrepresenting the nature and duration of the fire to MSHA officials responding to an anonymous report concerning the fire.

h.    After MSHA had ordered the withdrawal of all persons from the Mine, entering the Mine without MSHA's knowledge or authorization and manipulating ventilation controls to influence the air samples MSHA was using to determine whether the fire continued to burn underground.

i.    Concealing an unauthorized entry into the Mine and the manipulation of ventilation controls by directing the deletion of a telephone-call record.

j.    Attempting to conceal evidence of the conditions in the Mine by encouraging the removal or disposal of a portable gas detector that had been carried near the fire.

## Overt Acts

31. In furtherance of the conspiracy and to effect its objects, the defendants and other co-conspirators performed the following overt acts in the Southern District of Illinois, and elsewhere:

a.    On or about August 9, 2021, after a bleeder fan on the Viking side of the MC#1 Mine stopped operating at approximately 12:36 a.m. and remained inoperative for approximately one hour and twenty minutes, the M-Class side of the Mine was not evacuated after the fan had remained stopped for fifteen minutes, as required by 30 C.F.R. § 75.313(c)(1). M-CLASS and members of its management continued coal-production operations on the M-Class side of the Mine and permitted miners to remain underground, even though the Viking and M-Class sides constituted a single mine and shared a common ventilation system.

b.    On or about August 12 and August 13, 2021, members of the conspiracy and others acting at their direction deliberately failed to notify MSHA as required of the collapse of a secondary roof-support structure in Mine Entry 1, also known as the Belt Entry, near Crosscut 27, Longwall Headgate #8 that blocked or restricted miner access to an established escapeway.

c.    On or about August 13, 2021, members of the conspiracy and others acting at their direction caused the on-shift examination report for the third shift that began on August 12, 2021, to falsely state "none" in the section provided for hazardous conditions, thereby concealing the collapse of the secondary roof-support structure.

d.    On or about August 13, 2021, members of the conspiracy and others acting at their direction caused the preshift examination report prepared by the third shift that

began on August 12, 2021, for the oncoming first shift to falsely state "none" in the section provided for hazardous conditions, thereby concealing the collapse of the secondary roof-support structure.

e.       On or about August 13, 2021, in association with efforts to remove the collapsed secondary roof-support structure in Mine Entry 1, an unplanned fire occurred near Crosscut 27, Longwall Headgate #8. Members of the conspiracy deliberately failed to notify MSHA of the fire as required after M-CLASS, through its agents, knew that the fire had not been extinguished within 10 minutes of discovery.

f.       On or about August 13, 2021, members of the conspiracy and others acting at their direction caused the first shift on-shift examination report to falsely state "none" in the section provided for hazardous conditions, thereby concealing the collapse of the secondary roof-support structure.

g.       On or about August 13, 2021, members of the conspiracy and others acting at their direction caused the preshift examination report prepared by the first shift for the oncoming second shift to falsely state "none" in the section provided for hazardous conditions, thereby concealing the collapse of the secondary roof-support structure and unplanned fire.

h.       On or about August 13, 2021, members of the conspiracy, including **NOWLAND** and Partain, caused the second shift on-shift examination report to falsely state "none" in the section provided for hazardous conditions, thereby concealing the collapse of the secondary roof-support structure and the unplanned fire.

i.       On or about August 13, 2021, members of the conspiracy, including **HUMPHREY** and Partain, caused the preshift examination report prepared by the second

shift for the oncoming third shift to falsely state "none" in the section provided for hazardous conditions, thereby concealing the collapse of the secondary roof-support structure and unplanned fire.

j.      On or about August 14, 2021, members of the conspiracy, including **HUMPHREY**, and others acting at their direction, caused the third shift on-shift examination report for the third shift that began on August 13, 2021, to falsely state "none" in the section provided for hazardous conditions, thereby concealing the unplanned fire.

k.      On or about August 14, 2021, members of the conspiracy and others acting at their direction caused the preshift examination report prepared by the third shift that began on August 13, 2021, for the oncoming first shift to falsely state "none" in the section provided for hazardous conditions, thereby concealing the unplanned fire.

l.      On or about August 13 and August 14, 2021, M-CLASS, through its agents, continued to mine coal, and members of the conspiracy, including **KOONTZ, MACROPOULOS, NOWLAND,** and **HUMPHREY**, directed others to continue mining and conducting ad hoc firefighting activities rather than initiating and conducting an immediate mine evacuation.

m.     On or about August 13 and August 14, 2021, members of the conspiracy, including **KOONTZ** and **MACROPOULOS**, deliberately entered and worked underground without, or removed, devices intended to track and record their locations in the MC#1 Mine.

n.      On or about August 14, 2021, Parsons caused miners to be told falsely that the slope belt was broken and caused hourly miners to be sent home when, in truth and in

11

fact, the slope belt was not broken and the unplanned fire that began on August 13, 2021, had not been extinguished.

o. On or about August 14, 2021, members of the conspiracy, including **KOONTZ,** Parsons, and **MACROPOULOS,** went underground in the Mine and engaged in firefighting activities after hourly workers had been cleared from the Mine, and then left the Mine before MSHA officials arrived at the underground location of the fire.

p. On or about August 15, 2021, after MSHA had ordered the withdrawal of all persons from the Mine, members of the conspiracy, including **MACROPOULOS,** entered the Mine without MSHA's knowledge or authorization and manipulated ventilation curtains to influence air samples being drawn through boreholes as part of MSHA's investigation and fire response.

q. On or about August 17, 2021, after MSHA had ordered the withdrawal of all persons from the Mine, **KOONTZ** entered the Mine without MSHA's knowledge or authorization and manipulated ventilation curtains to influence air samples being drawn through boreholes as part of MSHA's investigation and fire response.

r. On or about August 17, 2021, **KOONTZ** directed Parsons to delete from Parsons's cellular telephone the recent-call entry reflecting a telephone call from **KOONTZ,** in which call **KOONTZ** related to Parsons **KOONTZ's** manipulation of ventilation curtains, and Parsons deleted the entry.

s. On or about August 20, 2021, a member of the conspiracy encouraged Partain to dispose of a portable gas detector that Partain had carried in the Mine on August 13, 2021, and Partain concealed the detector in a location away from the Mine.

All in violation of Title 18, United States Code, Section 371.

12

## COUNT 2
### Falsification of Examination Report

1. The Grand Jury realleges and incorporates herein by reference the allegations of paragraphs 1 through 27 of Count 1 above.

2. On or about August 13, 2021, in the Southern District of Illinois, and elsewhere, defendant,

### RANDY L. NOWLAND,

together with Partain, in a matter within the jurisdiction of the United States Department of Labor, Mine Safety and Health Administration, did knowingly make false statements, representations, and certifications in a record required to be maintained pursuant to the Mine Act, 30 U.S.C. § 801 et seq., and 30 C.F.R. § 75.362 by signing and countersigning the MC#1 Mine on-shift examination report for the second shift and falsely recording "none" in the section provided for hazardous conditions, when in truth and in fact he knew that an unplanned fire that had not been extinguished within 10 minutes of discovery was burning near Crosscut 27, Longwall Headgate #8, at the MC#1 Mine.

All in violation of Title 30, United States Code, Section 820(f) and Title 18, United States Code, Section 2.

## COUNT 3
### Falsification of Examination Report

1. The Grand Jury realleges and incorporates herein by reference the allegations of paragraphs 1 through 27 of Count 1 above.

2. On or about August 13, 2021, in the Southern District of Illinois, and elsewhere, defendant,

### CORY TAYLOR HUMPHREY,

13

together with Partain, in a matter within the jurisdiction of the United States Department of Labor, Mine Safety and Health Administration, did knowingly make false statements, representations, and certifications in a record required to be maintained pursuant to the Mine Act, 30 U.S.C. § 801 et seq., and 30 C.F.R. § 75.360 by signing and countersigning the MC#1 Mine preshift examination report for the oncoming third shift and falsely recording "none" in the section provided for hazardous conditions, when in truth and in fact he knew that an unplanned fire that had not been extinguished within 10 minutes of discovery was burning near Crosscut 27, Longwall Headgate #8, at the MC#1 Mine.

All in violation of Title 30, United States Code, Section 820(f) and Title 18, United States Code, Section 2.

### COUNT 4
**Falsification of Examination Report**

1.    The Grand Jury realleges and incorporates herein by reference the allegations of paragraphs 1 through 27 of Count 1 above.

2.    On or about August 14, 2021, in the Southern District of Illinois, and elsewhere, defendant,

**CORY TAYLOR HUMPHREY,**

and others known to the Grand Jury, in a matter within the jurisdiction of the United States Department of Labor, Mine Safety and Health Administration, did knowingly make false statements, representations, and certifications in a record required to be maintained pursuant to the Mine Act, 30 U.S.C. § 801 et seq., and 30 C.F.R. § 75.362 by signing and countersigning the MC#1 Mine on-shift examination report for the third shift and falsely recording "none" in the section provided for hazardous conditions, when in truth and in fact he knew that an unplanned

fire that had not been extinguished within 10 minutes of discovery was burning near Crosscut 27, Longwall Headgate #8, at the MC#1 Mine.

All in violation of Title 30, United States Code, Section 820(f) and Title 18, United States Code, Section 2.

## COUNT 5
### Failure to Conduct a Mine Evacuation

1.    The Grand Jury realleges and incorporates herein by reference the allegations of paragraphs 1 through 27 of Count 1 above.

2.    From on or about August 13, 2021, and continuing to on or about August 14, 2021, in the Southern District of Illinois, and elsewhere, defendants,

**RONALD DALE KOONTZ,
DEMITRIOS GEORGE MACROPOULOS,
RANDY L. NOWLAND, and
CORY TAYLOR HUMPHREY,**

as agents of corporate operator M-CLASS MINING, LLC, knowingly authorized, ordered, and carried out a willful violation of the mandatory safety standard set forth in 30 C.F.R. § 75.1501 by willfully failing to initiate and conduct an immediate mine evacuation when a mine emergency presented an imminent danger to miners due to fire.

All in violation of Title 30, United States Code, Sections 820(c) and 820(d) and Title 18, United States Code, Section 2.

## COUNT 6
### Failure to Notify MSHA of an Accident

1.    The Grand Jury realleges and incorporates herein by reference the allegations of paragraphs 1 through 27 of Count 1 above.

15

2.  From on or about August 13, 2021, and continuing to on or about August 14, 2021, in the Southern District of Illinois, and elsewhere, defendants,

**RONALD DALE KOONTZ,
DEMITRIOS GEORGE MACROPOULOS,
RANDY L. NOWLAND, and
CORY TAYLOR HUMPHREY,**

as agents of corporate operator M-CLASS MINING, LLC, knowingly authorized, ordered, and carried out a willful violation of the mandatory safety standard set forth in 30 C.F.R. § 50.10 by willfully failing to contact and notify MSHA at once, without delay, and within 15 minutes after M-CLASS, through its agents, knew or should have known that an accident had occurred, namely an unplanned mine fire that had not been extinguished within 10 minutes of discovery.

All in violation of Title 30, United States Code, Sections 820(c) and 820(d), and Title 18, United States Code, Section 2.

## COUNT 7
### Obstruction of an MSHA Proceeding

1.  The Grand Jury realleges and incorporates herein by reference the allegations of paragraphs 1 through 27 of Count 1 above.

2.  On or about August 15, 2021, in the Southern District of Illinois, and elsewhere, defendant,

**DEMITRIOS GEORGE MACROPOULOS,**

did corruptly influence, obstruct, impede, and endeavor to influence, obstruct, and impede the due and proper administration of the Mine Act, under which a proceeding was then pending before the United States Department of Labor, Mine Safety and Health Administration, namely MSHA's investigation of the unplanned fire and administration of its section 103(k) order, by entering the MC#1 Mine without MSHA's knowledge or authorization and manipulating ventilation curtains

16

for the purpose of altering the airflow and influencing air samples that MSHA was drawing through boreholes to determine whether the fire continued to burn underground.

All in violation of Title 18, United States Code, Section 1505.

## COUNT 8
### Obstruction of an MSHA Proceeding

1.   The Grand Jury realleges and incorporates herein by reference the allegations of paragraphs 1 through 27 of Count 1 above.

2.     On or about August 17, 2021, in the Southern District of Illinois, and elsewhere, defendant,

## RONALD DALE KOONTZ,

did corruptly influence, obstruct, impede, and endeavor to influence, obstruct, and impede the due and proper administration of the Mine Act, under which a proceeding was then pending before the United States Department of Labor, Mine Safety and Health Administration, namely MSHA's investigation of the unplanned fire and administration of its section 103(k) order, by entering the MC#1 Mine without MSHA's knowledge or authorization and manipulating ventilation curtains for the purpose of altering the airflow and influencing air samples that MSHA was drawing through boreholes to determine whether the fire continued to burn underground.

All in violation of Title 18, United States Code, Section 1505.

## COUNT 9
### Destruction, Alteration, or Concealment of a Record

1.   The Grand Jury realleges and incorporates herein by reference the allegations of paragraphs 1 through 27 of Count 1 above.

17

2.    On or about August 17, 2021, in the Southern District of Illinois, and elsewhere, defendant,

**RONALD DALE KOONTZ,**

knowingly and willfully caused another person to alter, destroy, conceal, and cover up a record, namely an entry in the recent-call history of Parsons's cellular telephone reflecting a telephone call from **KOONTZ**, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of the United States Department of Labor, Mine Safety and Health Administration, namely MSHA's investigation of the unplanned fire at the MC#1 Mine and administration of its section 103(k) order.

All in violation of Title 18, United States Code, Sections 1519 and 2(b).

Digitally signed by
STEVEN WEINHOEFT
Date: 2026.08.03
15:43:55 -05'00'

STEVEN D. WEINHOEFT
United States Attorney

Kevin F. Burke
Assistant United States Attorney

ADAM R. F. GUSTAFSON
Principal Deputy Assistant Attorney General
Energy and Natural Resources Division
United States Department of Justice

Lana N. Pettus
Senior Trial Attorney
Environmental Crimes Section